UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUADALUPE MARTINEZ-RODRIGUEZ,

Plaintiff,

v.

UNITED STATES, et al.,

Defendants.

CASE NO. C08-265JLR

ORDER

This matter comes before the court on Defendant Kevin Wetteland's ("Agent Wetteland") motion for summary judgment (Dkt. # 9). The court has reviewed the papers[1] and for the reasons that follow denies the motion for summary judgment.

## I. BACKGROUND

On August 22, 2005, at the direction of Special Agent Steven Taibi of the Drug Enforcement Agency ("DEA"), a Confidential Source ("CS") contacted Plaintiff Guadalupe Martinez-Rodriguez to arrange for the purchase of methamphetamine.

---

[1] Mr. Martinez-Rodriguez improperly filed a surreply (Dkt. # 22) that does not comply with W.D. Wash. Local Rule CR 7(g). The court strikes the surreply.

ORDER – 1

(Compl. (Dkt. # 1) ¶ 11.)  The CS and Mr. Martinez-Rodriguez agreed that Mr. Martinez-Rodriguez would bring one pound of methamphetamine to the parking lot of Café Arizona in Federal Way, Washington later that day.  (Compl. ¶¶ 9, 13.)  Mr. Martinez-Rodriguez along with another person came to the parking lot of Café Arizona and conducted a transaction with the CS.  After the transaction, Mr. Martinez-Rodriguez was placed under arrest by DEA agents.  (Compl. ¶ 9.)

In his complaint, Mr. Martinez-Rodriguez alleges that at the time of his arrest he was leaning with his back against the trunk of a vehicle.  (Compl. ¶ 14.)  He contends that he was wearing a white sleeveless t-shirt, shorts and sandals and that it was obvious that he had no weapons on his person or within his immediate reach.  (*Id.*)  Mr. Martinez-Rodriguez claims that to initiate the arrest, Special Agent Taibi approached Mr. Martinez-Rodriguez with his gun drawn.  (Compl. ¶ 15.)  Mr. Martinez-Rodriguez contends that he raised his hands and did not resist.  (*Id.*)  Agent Wetteland then "grabbed Mr. Martinez-Rodriguez in a finger hold and forcibly knocked him face down on the pavement while breaking three of the fingers on his right hand and causing Mr. Martinez-Rodriguez excruciating pain."  (*Id.*)  In addition to the injury to his fingers Mr. Martinez-Rodriguez contends that he also suffered injuries to his forehead and right shoulder.  (*Id.*)  As of the time of the complaint, Mr. Martinez-Rodriguez claimed that he had not regained use of his three fingers and that he suffered from chronic right hand pain.  (Compl. ¶ 18.)

Agent Wetteland's account of the incident differs in that he claims that as he approached Mr. Martinez-Rodriguez to arrest him, Mr. Martinez-Rodriguez failed to follow instructions, hesitated, looked around as if assessing the situation to determine whether to flee and lowered his hands from above his head to his side as if he were contemplating running.  (*See* Declaration of Kevin Wetteland (Dkt. # 10) ("Wetteland Decl.") ¶¶ 6-7.)  Agent Wetteland's account is corroborated by Special Agent Taibi's

ORDER – 2

recollection of the events of August 22, 2005, given on September 7, 2005 at a preliminary hearing. (*See* Declaration of Harold Malkin (Dkt. # 11), Ex. A.) Special Agent Taibi recalled that: "I got out with my weapon drawn, I told [Mr. Martinez-Rodriguez] to put his hands in the air and not to move. As soon as I did that his hands went up, but immediately thereafter his hands went down. He looked in one direction, and at that point a fellow agent took [Mr. Martinez-Rodriguez] to the ground." (*Id.*)

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

### A. Qualified Immunity

In examining the question whether Agent Wetteland is entitled to qualified immunity the court engages in a two step process. The first question to be asked is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer to the question is no then there is no need for further inquiries regarding qualified immunity; however, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* In other words, "[t]he contours of the right must be

ORDER – 3

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (internal quotation marks and citation omitted).

### 1. Do the Facts Alleged Show That Agent Wetteland Violated a Constitutional Right?

Mr. Martinez-Rodriguez alleges that Agent Wetteland used excessive force when he arrested him on August 22, 2005 violating his Fourth Amendment rights. The Supreme Court teaches that in determining whether the force used to effect a particular seizure was excessive the court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Reasonableness must also "be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In support of his motion for summary judgement, Agent Wetteland submitted a declaration detailing his version of the events leading up to and including Mr. Martinez-Rodriguez's arrest. Agent Wetteland states that he, along with other DEA agents, witnessed Mr. Martinez-Rodriguez sell one pound of methamphetamine to the CS. (Wetteland Decl. ¶ 2.) Before his arrest, Mr. Martinez-Rodriguez was not known to

ORDER – 4

Agent Wetteland or to the principal case agent. (*Id.*) As part of his training Agent Wetteland assumed that Mr. Martinez-Rodriguez might be armed to protect himself or the methamphetamine in his possession. (*Id.*) Even though Mr. Martinez-Rodriguez was wearing a sleeveless t-shirt and shorts Agent Wetteland was unable to determine from a visual inspection that Mr. Martinez-Rodriguez was not armed. (Wetteland Decl. ¶ 3.) Agent Wetteland states that he has encountered individuals dressed similarly to Mr. Martinez-Rodriguez who were later found to have concealed weapons. (*Id.*)

After the agents saw the "bust signal" Agent Wetteland and other agents immediately converged on the car where the deal had taken place. (Wetteland Decl. ¶ 5.) Agent Wetteland contends that he and Special Agent Taibi approached Mr. Martinez-Rodriguez with weapons drawn. (Wetteland Decl. ¶ 6.) Agent Wetteland claims that Agent Taibi ordered Mr. Martinez-Rodriguez to lie on the ground, which he did not immediately do. (*Id.*) Agent Wetteland states that instead, "although standing in place and offering no physical resistance, Plaintiff quickly turned his head from side to side, as if to assess possible avenues of escape. At the same time, and also within seconds of being instructed to get to the ground, Plaintiff moved his arms to waist-level in apparent preparation to break into a run." (*Id.*) Agent Wetteland assessed the situation, including Mr. Martinez-Rodriguez's failure to follow orders as well as the movement of his head from side-to-side and then he "lunged towards Plaintiff from the side and knocked him to the ground in order to subdue him and place him under arrest." (*Id.*)

Mr. Martinez-Rodriguez also submitted a declaration in response to the motion filed by Agent Wetteland. In it Mr. Martinez-Rodriguez elaborates on his version of the events of August 22, 2005. He states that at the time of the arrest he was ordered at gun point to put both of his hands up in the air. (Declaration of Guadalupe Martinez-Rodriguez (Dkt. # 18) ("Martinez-Rodriguez Decl.") ¶ 3.) He contends that he

ORDER – 5

immediately lifted his arms.  (*Id.*)  He claims that he did not turn his head from side to side or lower his hands and that he stood frozen as the agent approached him with his gun drawn.  (Martinez-Rodriguez Decl. ¶¶ 4-5, 7.)  He states that he was not ordered or tackled to the ground but instead, while his hands were above his head, Agent Wetteland grabbed three fingers of his right hand and forced his right arm behind his back.  (Martinez-Rodriguez Decl. ¶¶ 8-10.)  Mr. Martinez-Rodriguez states that as his arm was being forced behind his back and his fingers were being twisted and broken that he was being pushed to the pavement where he landed on his knees and the right side of his face/forehead and his right shoulder.  (Martinez-Rodriguez Decl. ¶¶ 11-12.)

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  "This is because such cases almost always turn on a jury's credibility determinations."  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).  Here, despite the key differences between the two accounts regarding whether Mr. Martinez-Rodriguez was taking actions consistent with an intent to flee, Agent Wetteland contends that summary judgment is still appropriate.  He argues that, "[w]hile Plaintiff's Declaration . . . places certain material facts in dispute . . . it does not negate the reasonableness of his own perception of Martinez-Rodriguez's actions during the tense, uncertain and rapidly-evolving seconds surrounding Martinez-Rodriguez's arrest."  (Reply at 2-3.)  On summary judgment the court must view the facts in the light most favorable to Mr. Martinez-Rodriguez, here, that means accepting as true Mr. Martinez-Rodriguez's allegation that he was standing frozen when Agent Wetteland pulled his hands behind his back breaking Mr. Martinez-Rodriguez's fingers.

ORDER – 6

The *Graham* factors favor denying the motion for summary judgment. First, the encounter between the men occurred just after Mr. Martinez-Rodriguez sold a pound of methamphetamine to the CS. This is a serious crime. Second, under the circumstances it was not unreasonable for Agent Wetteland to assume that an individual engaging in selling narcotics would be armed. *See United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979). Mr. Martinez-Rodriguez was wearing a tight shirt; however, his shorts appeared to fit loosely. It was not unreasonable for Agent Wetteland to believe that Mr. Martinez-Rodriguez could have been concealing a weapon on his person. From the video provided by Agent Wetteland of the buy, it appears that it took place in a crowded parking lot. This may have put other individuals parking or returning to their cars in danger. An examination of the last factor, whether Mr. Martinez-Rodriguez actively resisted arrest or attempted to flee, in conjunction with the previous two factors precludes summary judgment. Crediting Mr. Martinez-Rodriguez's version of the events, Mr. Martinez-Rodriguez was not told to take any action and stood frozen as Agent Wetteland approached. He did not resist and he did not attempt to flee. Under the totality of the circumstances a reasonable fact finder could find that Agent Wetteland used excessive force in arresting Mr. Martinez-Rodriguez. Although the crime was serious and Mr. Martinez-Rodriguez could have been armed, if a jury believed that Mr. Martinez-Rodriguez was not resisting arrest or attempting to flee, it could reasonably find that twisting his fingers in a manner that caused three of them to break and pushing him to the ground was force that need not, under the circumstances, be applied. The court finds that there is a genuine issue of material fact regarding whether Agent Wetteland employed excessive force and denies the motion for summary judgment on this ground.

ORDER – 7

**2. Was the Constitutional Right Clearly Established?**

Having found that a reasonable jury could find that Agent Wetteland employed excessive force, the court moves on to the second step in the analysis to determine whether the right was clearly established. In other words the question becomes whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Viewing the evidence in the light most favorable to Mr. Martinez-Rodriguez, Agent Wetteland broke three fingers and forcibly shoved to the ground a man who was compliant and made no move to flee as he was being arrested. The court acknowledges that the "police officer's right to make an arrest necessarily includes the right to use some degree of force." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000). However, no reasonable officer could believe that breaking a compliant suspect's fingers in order to "subdue" him and put him into handcuffs was lawful. *See Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (denying qualified immunity and holding "abusive application of handcuffs" causing pain and bruising unconstitutional); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (reversing grant of summary judgment for officers where officers injured arrestee's wrist and arm as they handcuffed her). The court finds that the constitutional right was clearly established and denies the motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons Agent Wetteland's motion for summary judgment is DENIED.

DATED this 18th day of August, 2008.

JAMES L. ROBART
United States District Judge

ORDER – 8