UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUADALUPE MARTINEZ-RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>Defendants. | CASE NO. C08-265JLR<br><br>ORDER |

This matter comes before the court on Defendant Kevin Wetteland's ("Agent Wetteland") motion for summary judgment on grounds of qualified immunity (Dkt. # 33) and Defendant United States' motion for summary judgment on Plaintiff Guadalupe Martinez-Rodriguez's Federal Tort Claims Act ("FTCA") claims (Dkt. # 35). The court has reviewed the papers and for the reasons that follow DENIES the motions for summary judgment.

ORDER – 1

## I. BACKGROUND[1]

Defendant Kevin Wetteland ("Agent Wetteland") initially filed a motion for summary judgment asserting qualified immunity (Dkt. # 9) on May 30, 2008. The court denied that motion. (*See* Dkt. # 23). Agent Wetteland now brings a renewed motion for summary judgment on the grounds that Mr. Martinez-Rodriguez, in his deposition, "directly and materially contradicts his [previously submitted] Declaration and establishes that he can no longer assert (1) that arresting officers never ordered him to the ground, which is undisputed he did not do, and (2) that, therefore, he was compliant at the time of his arrest by Agent Wetteland." (Mot. at 2.) He contends that because of this new information, there are no longer any issues of disputed material fact and that summary judgment is appropriate.

In his declaration submitted in opposition to the original motion for summary judgment, Mr. Martinez-Rodriguez stated that at the time of the arrest he was ordered at gun point to put both of his hands up in the air. (Declaration of Guadalupe Martinez-Rodriguez ("Martinez-Rodriguez Decl.") (Dkt. # 18) ¶ 3.) He contended that he immediately lifted his arms. (*Id.*) He claimed that he did not turn his head from side to side or lower his hands and that he stood frozen as the agent approached him with his gun drawn. (Martinez-Rodriguez Decl. ¶¶ 4-5, 7.) He stated that he was not ordered or tackled to the ground but instead, while his hands were above his head, Agent Wetteland grabbed three fingers of his right hand and forced his right arm behind his back. (Martinez-Rodriguez Decl. ¶¶ 8-10.) Mr. Martinez-Rodriguez stated that as his arm was being forced behind his back and his fingers were being twisted and broken that he was

---

[1] As the parties are well-versed in the background facts in this matter, the court incorporates by reference the background section found in its order on Agent Wetteland's first motion for summary judgment.

ORDER – 2

pushed to the pavement where he landed on his knees and the right side of his face/forehead and his right shoulder. (Martinez-Rodriguez Decl. ¶¶ 11-12.)

At Mr. Martinez-Rodriguez's deposition, taken after the submission of the declaration, the following exchanges occurred:

> Q: Okay. So, both agents had their guns drawn and pointed at you?
> A: (By interpreter) I don't remember well.
> Q: Okay. Did at least one of them have his gun pointed at you?
> A: (By interpreter) Yes.
> Q: Okay. And you said they were talking? What did they say?
> A: (By interpreter) Well, they say something, but I didn't understand and so I raised my hands. I raised my hands—
> . . .
> Q: Okay. Well, I'm going to represent to you that the agent who you are accusing of using excessive force in connection with your arrest is an agent by the name of Kevin Wetteland. Now, in his declaration at paragraph 6, Special Agent Wetteland says, "Plaintiff" referring to you, "was ordered to lie on the ground by Special Agent Taibi, which Plaintiff did not immediately do." Is that accurate?
> A: (By interpreter) Well, I didn't understand anything. I was just - - I stood there, I remained standing.
> Q: Okay. But you don't know if you were instructed to lie on the ground, do you?
> A: (By interpreter) Yes - - no, no, I don't know it.
> Q: Okay. Agent Wetteland also says, "Plaintiff quickly turned his head from side to side, as if to assess possible avenues of escape."
> A: (By interpreter) No, that's not - - I didn't move my head.
> Q: Okay. Agent Wetteland then says, "at the same time, and also within seconds of being instructed to get to the ground, Plaintiff moved his arms to waist-level in apparent preparation to break into a run." Is it accurate that you moved your hands from above your head?
> A: (By interpreter) No. I didn't. When they grabbed my hand and put them back, I fell on my knees to the floor, and that's when I was laying down, but I had my hands - - my hands over there already.

(Deposition of Guadalupe Martinez-Rodriguez ("Martinez-Rodriguez Dep.") (Dkt. ## 34-2, 38-2)[2].)

---

[2] The pagination on the excerpts of the deposition transcripts provided by the parties is inconsistent. Because the excerpts are short and they do not cover the exact same material, the court will refer to them without citing specific page and line numbers.

ORDER – 3

In addition to Agent Wetteland's renewed motion for summary judgment, the United States has, for the first time, filed a motion for summary judgment on Mr. Martinez-Rodriguez's FTCA claims.

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

### A. Agent Wetteland's Motion for Summary Judgment

#### 1. Qualified Immunity

In examining the question whether Agent Wetteland is entitled to qualified immunity the court engages in a two-step process. The first question to be asked is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[3] If the answer to the question is no, then there is no need for further inquiries regarding qualified immunity; however, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the

---

[3] The court has reviewed the Supreme Court's recent decision in *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 818 (2009), and declines its invitation to skip the first portion of the *Saucier* analysis.

ORDER – 4

right was clearly established." *Id.* In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (internal quotation marks and citation omitted).

### i. Do the Facts Alleged Show That Agent Wetteland Violated a Constitutional Right?

Mr. Martinez-Rodriguez alleges that Agent Wetteland violated his Fourth Amendment rights by using excessive force when he arrested him on August 22, 2005. The Supreme Court teaches that in determining whether the force used to effect a particular seizure was excessive the court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Reasonableness must also "be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.[4]

In support of his initial motion for summary judgement, Agent Wetteland submitted a declaration detailing his version of the events leading up to and including Mr.

---

[4] The Ninth Circuit also instructs that a court may consider the availability of alternative methods of capturing or subduing a suspect. *See Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005). Because neither party addressed this factor the court does not consider it.

ORDER – 5

Martinez-Rodriguez's arrest. Agent Wetteland stated that he, along with other DEA agents, witnessed Mr. Martinez-Rodriguez sell one pound of methamphetamine to the Cooperating Source ("CS"). (Declaration of Kevin Wetteland ("Wetteland Decl.") (Dkt. # 10) ¶ 2.) Before his arrest, Mr. Martinez-Rodriguez was not known to Agent Wetteland or to the principal case agent. (*Id.*) In accordance with his training, Agent Wetteland assumed that Mr. Martinez-Rodriguez might be armed to protect himself or the methamphetamine in his possession. (*Id.*) Even though Mr. Martinez-Rodriguez was wearing a sleeveless t-shirt and shorts Agent Wetteland was unable to determine from a visual inspection that Mr. Martinez-Rodriguez was not armed. (Wetteland Decl. ¶ 3.) Agent Wetteland stated that he has encountered individuals dressed similarly to Mr. Martinez-Rodriguez who were later found to have concealed weapons. (*Id.*)

After the agents saw the "bust signal" Agent Wetteland and other agents immediately converged on the car where the deal had taken place. (Wetteland Decl. ¶ 5.) Agent Wetteland contended that he and Agent Stephen Taibi approached Mr. Martinez-Rodriguez with weapons drawn. (Wetteland Decl. ¶ 6.) Agent Wetteland claimed that Agent Taibi ordered Mr. Martinez-Rodriguez to lie on the ground, which he did not immediately do. (*Id.*) Instead, "although standing in place and offering no physical resistance, Plaintiff quickly turned his head from side to side, as if to assess possible avenues of escape. At the same time, and also within seconds of being instructed to get to the ground, Plaintiff moved his arms to waist-level in apparent preparation to break into a run." (*Id.*) Agent Wetteland assessed the situation, including Mr. Martinez-Rodriguez's failure to follow orders as well as the movement of his head from side-to-side, and then he "lunged towards Plaintiff from the side and knocked him to the ground in order to subdue him and place him under arrest." (*Id.*)

ORDER – 6

Mr. Martinez-Rodriguez contends in both his declaration submitted in opposition to the original motion for summary judgment and his deposition testimony that: (1) at the time of the arrest he was ordered at gun point to put both of his hands up in the air; (2) he immediately lifted his arms; (3) he did not turn his head from side to side or lower his hands and that he stood frozen as the agent approached him with his gun drawn; and (4) as his arm was being forced behind his back and his fingers were being twisted and broken that he was pushed to the pavement where he landed on his knees and the right side of his face/forehead and his right shoulder. (Martinez-Rodriguez Decl. ¶¶ 3-5, 7, 10-12; Martinez-Rodriguez Dep.) The only difference between the declaration and deposition testimony is that Mr. Martinez-Rodriguez in his declaration stated: "I was not ordered to the ground." (Martinez-Rodriguez Decl. ¶ 8.) In his deposition, Mr. Martinez-Rodriguez described the events as follows:

> Q: Okay. Well, I'm going to represent to you that the agent who you are accusing of using excessive force in connection with your arrest is an agent by the name of Kevin Wetteland. Now, in his declaration at paragraph 6, Special Agent Wetteland says, "Plaintiff" referring to you, "was ordered to lie on the ground by Special Agent Taibi, which Plaintiff did not immediately do." Is that accurate?
> A: (By interpreter) Well, I didn't understand anything. I was just - - I stood there, I remained standing.
> Q: Okay. But you don't know if you were instructed to lie on the ground, do you?
> A: (By interpreter) Yes - - no, no, I don't know it.

(Martinez-Rodriguez Dep.) Although Agent Wetteland argues that these statements are contradictory, the court determines that the statements are not necessarily inconsistent with each other. Mr. Martinez-Rodriguez contends that he is not fluent in the English language. It is conceivable that, based on his lack of understanding of English, Mr. Martinez-Rodriguez believed that he had not been commanded to get on the ground. At his deposition when faced with a direct question regarding Agent Wetteland's description of the events, Mr. Martinez-Rodriguez stated that he did not understand what had been

ORDER – 7

said by the agents and then equivocated regarding whether he could definitively say that he had not been instructed to lie on the ground.

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). "This is because such cases almost always turn on a jury's credibility determinations." *Smith*, 394 at 701. Here, despite a minor difference between Mr. Martinez-Rodriguez's statements, Agent Wetteland contends that summary judgment is appropriate. He argues that, "it is undisputed that Agent Wetteland's reasonable use of limited force was precipitated by the fact that a presumptively armed and dangerous drug suspect had failed to comply with commands by Agent Taibi to 'get to the ground.'" (Mot. at 6.) Essentially the government now argues that because Mr. Martinez-Rodriguez admits that he does not know whether he was ordered to the ground due to his lack of fluency in the English language, Mr. Martinez-Rodriguez is transformed from a compliant to non-compliant suspect. The court does not think that the issue is so black and white. Mr. Martinez-Rodriguez has not changed his assertion that he was standing frozen in place with his hands up when Agent Wetteland pulled his hand and fingers behind his back, breaking his fingers. On summary judgment the court must view the facts in the light most favorable to Mr. Martinez-Rodriguez. Here, that means accepting as true Mr. Martinez-Rodriguez's assertion that he was standing frozen when Agent Wetteland pulled his hands behind his back breaking Mr. Martinez-Rodriguez's fingers. Without more, the court is not persuaded that Mr. Martinez-Rodriguez's failure to comply with a command that he asserts he did not understand necessarily transforms him into a non-compliant suspect. The cases cited by Agent Wetteland involving clearly non-compliant suspects

ORDER – 8

are distinguishable.[5] The court acknowledges that this is a close case and these events likely took place within a matter of seconds. Nonetheless, crediting Mr. Martinez-Rodriguez's version of the events, other than failing to follow a command to get on the ground, which he is not sure he was given and in any event allegedly could not understand, Mr. Martinez-Rodriguez made no other movement that would lead the officers to believe that he was getting ready to flee from or harm the officers. Under these circumstances, the court is not inclined to determine that this makes Mr. Martinez-Rodriguez a non-compliant suspect.

Turning to the *Graham* factors, these factors favor denying the motion for summary judgment. First, the encounter between the men occurred just after Mr. Martinez-Rodriguez sold a pound of methamphetamine to the CS. This is a serious crime. Second, under the circumstances, it was not unreasonable for Agent Wetteland to assume that an individual engaging in selling narcotics would be armed. *See United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979). Mr. Martinez-Rodriguez was wearing a

---

[5] Agent Wetteland cites three cases for the proposition that courts regularly find in cases "involving suspects who failed to follow an officer's commands, that an exercise of proportional, relatively modest force was objectively reasonable . . . ." (Mot. at 6-7.) In the first case, *Beaver v. City of Federal Way*, 507 F. Supp. 2d 1137, 1140, 1143-47 (W.D. Wash. 2007), the court found, after a three-day trial, the use of force (taser) reasonable, at least initially, where the suspect was trying to evade arrest by flight and refused to stop when commanded to do so. In the second case, *Millender v. City of Pensacola*, No. 3:06cv205/MD, 2008 WL 4925652, at *14-15 (N.D. Fla. Nov. 14, 2008), which also went to trial, the court found that the use of a taser did not constitute excessive force where a woman refused to put down a cordless house phone, keys, a pen and some papers despite repeated requests by officers to do so. The last case, *Molnar v. Doerfler*, 488 F. Supp. 2d 138, 141 (D. Conn. 2007), involved a determination that summary judgment was appropriate on a plaintiff's claim of excessive force where the plaintiff had been drinking and could not remember how he sustained the injuries he allegedly suffered. Additionally the court noted plaintiff's "repeated" failure to comply with the directions of the officers. *Id.* at 142. Here, the court is faced with a much different situation. Mr. Martinez-Rodriguez was not attempting to evade arrest and had allegedly failed to follow only one order, which he claims he did not understand.

ORDER – 9

tight shirt; however, his shorts appeared to fit loosely. It was not unreasonable for Agent Wetteland to believe that Mr. Martinez-Rodriguez could have been concealing a weapon on his person. From the video provided by Agent Wetteland of the buy, it appears that it took place in a crowded parking lot. This may have put other individuals parking or returning to their cars in danger.

An examination of the last factor, whether Mr. Martinez-Rodriguez actively resisted arrest or attempted to flee, in conjunction with the previous two factors, however, precludes summary judgment. Crediting Mr. Martinez-Rodriguez's version of the events, Mr. Martinez-Rodriguez did not understand the officers' commands and stood frozen as Agent Wetteland approached. He did not resist and he did not attempt to flee. Under the totality of the circumstances, a reasonable fact-finder could find that Agent Wetteland used excessive force in arresting Mr. Martinez-Rodriguez. Although the crime was serious and Mr. Martinez-Rodriguez could have been armed, if a jury believed that Mr. Martinez-Rodriguez was not resisting arrest or attempting to flee, it could reasonably find that twisting his fingers in a manner causing some of them to break and pushing him to the ground was force that need not, under the circumstances, be applied. Had Mr. Martinez-Rodriguez not denied lowering his hands or looking from side to side, the court would be inclined to determine that Mr. Martinez-Rodriguez was non-compliant and that Agent Wetteland's actions were reasonable; however, these are not the facts before the court. Although the court acknowledges that this is a close case, it nevertheless finds that there is a genuine issue of material fact regarding whether Agent Wetteland employed excessive force and therefore violated the Fourth Amendment. The court denies the motion for summary judgment on this ground.

### ii. Was the Constitutional Right Clearly Established?

Having found that a reasonable jury could find that Agent Wetteland employed excessive force, the court moves on to the second step in the analysis to determine whether the right was clearly established. In other words, the question becomes whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Viewing the evidence in the light most favorable to Mr. Martinez-Rodriguez, Agent Wetteland forcibly shoved to the ground and broke the fingers of a man who was standing frozen with his hands up and making no move to flee as he was being arrested. The court acknowledges that the "police officer's right to make an arrest necessarily includes the right to use some degree of force." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000). However, no reasonable officer could believe that breaking a compliant suspect's fingers while subduing him was lawful. *See Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (denying qualified immunity holding "abusive application of handcuffs" causing pain and bruising unconstitutional and noting "the use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985"); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (reversing grant of summary judgment for officers where officers injured arrestee's wrist and arm as they handcuffed her).[6] The court finds that the constitutional right was clearly established and denies the motion for summary judgment.

---

[6] Agent Wetteland contends that these cases are factually distinguishable from the situation he faced; however, the Supreme Court has held that an officer "can still be on notice that their conduct violates established law even in novel factual circumstances" and has "expressly rejected a requirement that previous cases be 'fundamentally similar.'" *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

ORDER – 11

**B.     United States' Motion for Summary Judgment on FTCA Claims**

Under the FTCA the United States is liable for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The parties agree that the law of Washington governs Mr. Martinez-Rodriguez's tort claims. RCW 9A.16.020 provides in relevant part that the "use, attempt, or offer to use force upon or toward the person of another is not unlawful . . . (1) Whenever necessarily used by a public officer in the performance of a legal duty . . . ." The word "necessary" as used in the statute "means that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended." RCW 9A.16.010(1).

The United States argues that summary judgment on the FTCA claims is warranted because under the applicable state law, Agent Wetteland's conduct was reasonable in light of the undisputed facts. Having found a genuine issue of material fact above, regarding whether Agent Wetteland employed excessive force, the court is not inclined to grant summary judgment in favor of the United States on the FTCA claims. The court denies the United States' motion.

### III. CONCLUSION

For the foregoing reasons Agent Wetteland's and the United States' motions for summary judgment are DENIED.

ORDER – 12

1 DATED this 3rd day of April, 2009.

JAMES L. ROBART
United States District Judge

ORDER – 13